Filed 3/28/25  P. v. Cole CA2/8
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GERALD COLE,<br><br>    Defendant and Appellant. | B316819<br><br>(Los Angeles County<br>Super. Ct. No. BA492587) |

        APPEAL from a judgment of the Superior Court of Los Angeles County.  Deborah S. Brazil, Judge.  Reversed and remanded with directions.

        Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

This case is before us again on remand from the California Supreme Court. A jury convicted appellant Gerald Cole of first degree residential burglary (Pen. Code,[1] § 459; count 1), criminal threats (§ 422, subd. (a); count 2), and contempt of court (§ 166, subd. (c)(1); count 3). The trial court sentenced Appellant to the upper term of six years on count 1, a consecutive term of eight months on count 2, and a concurrent term of 364 days on count 3. On appeal, Appellant argued he was entitled to a jury instruction on the lesser included offense of attempted criminal threats, and the case must be remanded for resentencing due to a change in the law governing determinate sentencing. In our original opinion, we affirmed both the conviction and the sentence.

The California Supreme Court granted Appellant's petition for review. Following its decision in *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*), the Supreme Court returned the case to us with directions to vacate our prior decision and to reconsider the appeal in light of *Lynch*. In *Lynch*, the Supreme Court addressed what standard of review applies when deciding whether remand for resentencing is required under the amended law. Although we allowed both parties an opportunity to file supplemental briefs, only the People did so. After considering the Supreme Court's decision in *Lynch* and the People's brief, we cannot conclude beyond a reasonable doubt that a jury would have found true every aggravating factor on which the trial court relied in imposing an upper term sentence. Accordingly, a remand for resentencing is required in this case.

---

[1] Unless otherwise stated, all further statutory references are to the Penal Code.

# BACKGROUND

## A. Prior Incidents of Domestic Violence Between Appellant and Fae

Appellant and his wife Fae A. were married for approximately eight years and had three children. Over that period of time, there were several instances of domestic violence between them. The first occurred about a month after they met, where Appellant slammed Fae into a bed, choked her, and punched her in the face. Fae stayed with Appellant after that because Appellant apologized to her.

A few years later into their marriage, in 2014, another domestic violence incident took place after they had both consumed alcohol at a family birthday party. Fae testified that Appellant was calling her offensive names and then he struck her in the chest, causing her to fall. When Fae got up, she began hitting Appellant, and they then proceeded to hit each other. Fae ran outside, but the fighting continued. The fighting stopped when the neighbors came out. Appellant denies that he hit or pushed Fae that day.

On New Year's Day 2020, Appellant and Fae were at a bus stop and began arguing. Appellant called Fae a "bitch" and "whore" in front of their children. Appellant believed that Fae had been cheating on him with another man. As Appellant moved closer and closer to Fae, he pushed her in the head. Fae then hit him, and they both started fighting. Eventually, someone separated them, and the fighting stopped. Fae had some scratches on her face, and Appellant was bleeding from his mouth. Appellant denied striking Fae during this incident and said she was the sole aggressor. Fae flagged down a passing

police officer. After the police interviewed Appellant and Fae, the police officer decided to arrest Fae, but no charges were pressed.

Appellant and Fae separated after the bus stop incident. Sometime in March 2020, they resumed their relationship but did not live together.

Sometime in July 2020, Appellant was living with his brother when another violent incident took place between Appellant and Fae. Appellant, who had been drinking, told Fae he wanted nothing to do with her and told her to leave. When Fae tried to leave, Appellant prevented her from taking any belongings that he had personally purchased. Appellant began kicking Fae and grabbed onto her bag as she attempted to run out into the street. Once outside, Appellant struck Fae, knocking her to the ground. He continued punching her after she was down for several more minutes.

Sometime after this incident, Appellant was served with a protective order requiring him to stay away from Fae. By November 2020, Fae ended her relationship with Appellant.

B.     **January 11, 2021 Incidents at Issue in This Case**

On January 10, 2021, Appellant called Fae asking to sleep with her. When Fae said "No," Appellant became angry and threatened to kill Fae. At the time, Fae did not take the threat seriously and hung up the phone.

After that, Appellant continued to call back, asking to get back together with Fae. Each time, she told him "No." Finally, Fae stopped answering the phone.

The next day, Fae noticed that she had tens of missed calls and a voice message from Appellant. The voice message said, "Fae, man, if I can't have you . . . ain't nobody gonna have you, Fae." After hearing the voice message, Fae was afraid because

4

she thought maybe Appellant was serious about killing her. However, she did not call the police at that time.

Later that afternoon, Fae heard someone trying to break in through the window in her apartment. Fae ran outside and went to the next-door neighbor's house. Fae called 911 and said she did not see who broke in but assumed it might be a male. Fae did not tell the 911 operator that she thought it might have been Appellant trying to break in. At trial, Fae testified that because of Appellant's prior threats, she feared it was Appellant breaking in.

When the police arrived, one officer saw a man exiting a broken window of the building. The officer told the man to stop, but the man ran toward the back of the building. Another officer went to the rear of the building and saw Appellant on the opposite side of a five-foot wall. Appellant was then arrested. During trial, Fae testified that she was still afraid of Appellant.

## C. Relevant Procedural History

Appellant was charged with three crimes. In count 1, Appellant was charged with first degree residential burglary with a person present (§ 459), a serious and violent felony within the meanings of sections 1192.7, subdivision (c), and 667.5, subdivision (c). In count 2, Appellant was charged with making a criminal threat (§ 422, subd. (a)). Finally, in count 3, Appellant was charged with misdemeanor contempt of court (§ 166, subd. (c)(1)). On November 10, 2021, a jury convicted Appellant of all three charged crimes.

Appellant was sentenced on November 18, 2021. The court sentenced Appellant to a total of six years and eight months consisting of: the upper term of six years for count 1; eight months (one-third the midterm of two years) on count 2, to run

consecutively to count 1; and 364 days on count 3, to run concurrent with count 1.  Appellant received credit for 235 days (204 actual plus 15 percent conduct credit).

Appellant timely appealed.

## DISCUSSION

## I.     The Trial Court Had a Sua Sponte Duty to Instruct on Lesser Included Offenses and Defense Counsel Did Not Invite Any Error

Because an attempted criminal threat is a lesser included offense of a criminal threat (See *People v. Toledo* (2001) 26 Cal.4th 221, 230–232 (*Toledo*); *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 607), the trial court had a duty to instruct the jury sua sponte on the lesser included offense of attempted criminal threats, if there was substantial evidence from which a jury could reasonably conclude the defendant committed the lesser, uncharged offense, but not the greater.  (See *People v. Brothers* (2015) 236 Cal.App.4th 24, 29; *People v. Birks* (1998) 19 Cal.4th 108, 118 ["even absent a request, and even over the parties' objections, the trial court must instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser"]; see also *People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*), disapproved on other grounds by *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7 [trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence].)  Substantial evidence is evidence that a reasonable jury could find persuasive. (*People v. Williams* (2015) 61 Cal.4th 1244, 1263.)

Further, the invited error doctrine does not apply here when there is no evidence that defense counsel made a "tactical

6

decision to force the jury to an all-or-nothing choice." (*People v. Walker* (2015) 237 Cal.App.4th 111, 118 (*Walker*).) "The trial court's duty to fully and correctly instruct the jury on the basic principles of law relevant to the issues raised by the evidence in a criminal case is so important that it cannot be nullified by defense counsel's negligent or mistaken failure to object to an erroneous instruction or the failure to request an appropriate instruction." (*People v. Avalos* (1984) 37 Cal.3d 216, 229.) An express tactical objection is required before a failure to instruct on a lesser included offense may be found to have been "invited." (*People v. Wickersham* (1982) 32 Cal.3d 307, 335, disapproved on other grounds by *People v. Barton* (1995) 12 Cal.4th 186, 201.)

Here, the record is silent as to whether defense counsel thought about an attempted criminal threat instruction at all, let alone made a tactical choice about whether to request it. (See *Walker, supra,* 237 Cal.App.4th at p. 118.) When the court said it did not believe there were any lesser included offenses, defense counsel only addressed whether an attempted burglary instruction should be given: "No, it's up to the jury to decide what they decide was his reason for going in. So . . . I am not asking for a lesser." Accordingly, we find no invited error.

On appeal, we review the trial court's failure to instruct on a lesser included offense de novo, considering the evidence in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) The erroneous failure to instruct sua sponte on a lesser included offense in a noncapital case is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome. In other words, we apply the *People v. Watson* (1956)

7

46 Cal.2d 818 (*Watson*) standard of prejudice. (*Breverman*, *supra*, 19 Cal.4th at p. 165.)

## II. Even Assuming the Trial Court Failed to Instruct on Attempted Criminal Threat, Any Error Was Harmless

"In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person'; (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out'; (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat'; (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety'; and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*Toledo, supra*, 26 Cal.4th at pp. 227–228; see also § 422.)

Sustained fear, the fourth element of a criminal threat, "requires proof of a mental element in the victim" (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 (*Allen*)) and "has a subjective and an objective component." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) "A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances." (*Ibid*.) " 'Sustained fear' refers to a state of mind," and "describes the emotion the victim experiences." (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 (*Fierro*).) Within the meaning of section 422, "sustained" means

"a period of time that extends beyond what is momentary, fleeting, or transitory." (*Allen*, at p. 1156.) However, no set time frame exists for a victim to be in a statutorily sufficient state of "sustained fear." (*Id.* at p. 1156, fn. 6.) For example, case law qualifies a victim's fear as sufficiently "sustained" within the meaning of section 422 when the fear lasts anywhere between one and 15 minutes. (See *Fierro*, at p. 1349 [one minute sufficient to qualify as sustained fear when a defendant threatens to kill a victim with a visible weapon]; *Allen*, at p. 1156 [15 minutes sufficient to qualify as sustained fear].) In addition, a "victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear." (*Allen*, at p. 1156; but see *In re Ricky T.*, at p. 1138 [a victim's lack of history with defendant paired with victim's one-day delay in calling police evidenced a fear that was merely fleeting].)

An attempted criminal threat is a lesser included crime of a criminal threat. (*People v. Chandler* (2014) 60 Cal.4th 508, 514 (*Chandler*); *Toledo, supra*, 26 Cal.4th at p. 226.) " '[I]f a defendant . . . acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat.' " (*Chandler*, at p. 515.)

We need not reach whether there was substantial evidence to warrant the lesser included instruction of attempted criminal threat because we conclude any error was harmless. "[E]vidence sufficient to warrant an instruction on a lesser included offense

9

does not necessarily amount to evidence sufficient to create a reasonable probability of a different outcome had the instruction been given." (*People v. Banks* (2014) 59 Cal.4th 1113, 1161, disapproved on another point in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.) We agree with the Attorney General that after examining the entire record, we cannot conclude that there is a reasonable probability that the jury would have found Appellant guilty of attempted criminal threat, rather than the completed crime of criminal threat. (*Breverman, supra*, 19 Cal.4th at p. 165.)

"[I]n a noncapital case, error in failing sua sponte to instruct . . . on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under *Watson*." (*Breverman, supra*, 19 Cal.4th at p. 178.) "Such posttrial review focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Id.* at p. 177.) " ' "The Supreme Court [in *Watson*] has emphasized 'that a "probability" in this context does not mean more likely than not, but merely a *reasonable chance,* more than an *abstract possibility*.' " ' " (*People v. Brown* (2016) 245 Cal.App.4th 140, 155.) " '[U]nder *Watson*, a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 955.)

To find Appellant guilty of the lesser offense of attempted criminal threat based on the theory that Fae did not experience sustained fear, the jury would have had to reach a set of conclusions about the evidence that, taken together, do not appear reasonably probable. "[W]hen a defendant is charged with attempted criminal threat, the jury must be instructed that the offense requires not only that the defendant have an intent to threaten but also that the intended threat be sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*Chandler, supra*, 60 Cal.4th at p. 525.) The jury would have had to conclude that, even given Appellant's abusive history with Fae, Fae did not in fact experience sustained fear as a result of the intended threat, despite her testimony that she felt afraid when she received the second threat. (See *Allen, supra*, 33 Cal.App.4th at p. 1156 ["victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear"].) In addition, Fae testified that she fled from her home later that same day when she heard noises at her window consistent with a break-in because she feared that her husband was attempting to get into her home. Fae then called 911 from her neighbor's home. (See *Fierro, supra*, 180 Cal.App.4th a pp. 1345–1346 [holding that person who drove away and called 911 after defendant exposed a weapon was in sustained fear].) Further, Fae's fear was borne out as her husband did break into her home that afternoon. Finally, Fae further testified that her fear persisted to the time of trial.

The jury resolved the factual question regarding Fae's credibility against Appellant in convicting him of the criminal threats, necessarily rejecting Appellant's version of the events. (See *People v. Turner* (1990) 50 Cal.3d 668, 690 ["erroneous

11

failure to instruct on a lesser included offense is not prejudicial if 'it is possible to determine that . . . the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions' "].) Having credited Fae's testimony about the underlying events, it is not reasonably probable that the jury would then conclude Fae was lying when she testified that she was afraid after hearing the voice message, and testified that she feared it might be her husband who was coming through the window of her apartment. As such, Appellant's contention that her fear of Appellant did not continue when she heard the break-in is unavailing.

Accordingly, any error was harmless.

## III.  Appellant is Entitled to a Remand for Resentencing

Appellant contends the case must be remanded for resentencing due to the enactment of Senate Bill No. 567 (2021–2022 Reg. Sess.), which amended the standards for imposing an upper term sentence under California's determinate sentencing law.  The People agree the amended law applies retroactively to Appellant, but argue a remand is unwarranted because the jury would have found each aggravating sentencing factor relied upon by the trial court to be true beyond a reasonable doubt.  Based on the Supreme Court's recent decision in *Lynch*, *supra*, 16 Cal.5th 730, we conclude that a remand for resentencing is required in this case.

Effective January 1, 2022, Senate Bill No. 567 amended section 1170, the determinate sentencing law.  (Stats. 2021, ch. 731, § 1.3.)  Section 1170 now provides, in relevant part, that where a statute specifies three possible terms of imprisonment, "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise

12

provided in paragraph (2)." (§ 1170, subd. (b)(1).) The middle term, therefore, is the presumptive determinate sentence under the amended law. (See *Lynch*, *supra*, 16 Cal.5th at p. 748.)

A court has discretion, however, to impose an upper term sentence if certain aggravating factors, aside from a defendant's prior convictions, are proven beyond a reasonable doubt or stipulated to by the defendant. (§ 1170, subd. (b)(2); *Lynch*, *supra*, 16 Cal.5th at p. 742.) Specifically, section 1170, subdivision (b)(2) states that the court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition" of an upper term sentence, and "the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id*., subd. (b)(2).) The court may nevertheless "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id*., subd. (b)(3).)

California Rules of Court, rule 4.421 (Rule 4.421) provides a nonexhaustive list of aggravating sentencing factors that may be used to increase a defendant's sentence to the upper term under section 1170, subdivision (b). Factors related to the charged crime include: "(1) The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; [¶] (2) The defendant was armed with or used a weapon at the time of the commission of the crime; [and] [¶] (3) The victim was particularly vulnerable." (Rule 4.421(a)(1)–(3).) Factors related to the defendant include: "(1) The defendant has engaged in violent conduct that indicates a serious danger to society; [¶]

13

(2) The defendant's prior convictions . . . are numerous or of increasing seriousness; [¶] (3) The defendant has served a prior term in prison or county jail under section 1170(h); [¶] (4) The defendant was on probation . . . or parole when the crime was committed; and [¶] (5) The defendant's prior performance on probation . . . or parole was unsatisfactory." (Rule 4.421(b)(1)–(5).) In addition, the court may consider "[a]ny other factors . . . which reasonably relate to the defendant or the circumstances under which the crime was committed." (Rule 4.421(c).)

In *Lynch*, our Supreme Court held that, under current section 1170, "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch*, *supra*, 16 Cal.5th at p. 768.) Applying the harmless error standard set forth in *Chapman v. California* (1967) 386 U.S. 18, the Supreme Court further held that "[t]he violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements. If the reviewing court cannot so determine, applying the *Chapman* standard of review, the defendant is entitled to a remand for resentencing." (*Lynch*, at p. 768.) Moreover, "[t]his is true even if the [trial] court might have imposed the same sentence based on fewer aggravating circumstances than those it cites on the record. When the trial court *actually relies* on improperly proven aggravating facts to 'justify' an upper term sentence, a Sixth Amendment violation occurs and *Chapman* must be satisfied." (*Lynch*, at p. 761.)

14

Here, the trial court applied the prior version of section 1170, subdivision (b), that was in effect at the time of Appellant's 2021 sentencing. As the People concede, the 2022 amendments to the statute apply retroactively to Appellant because his judgment was not final when those amendments took effect. (*Lynch*, *supra*, 16 Cal.5th at pp. 748–749.) In imposing the upper term of six years on the count 1 burglary conviction, the court found several aggravating factors applied and there were no mitigating factors. The court first considered factors related to the crime as set forth in Rule 4.421(a) and (c): Appellant made death threats to the victim; the police recovered a box cutter from Appellant's clothing when he was arrested; Fae was particularly vulnerable with young children and there was an approximate age difference of 30 years; there were numerous prior acts of domestic violence perpetrated by Appellant on Fae, but noted that "in fairness, the victim testified, as did the defendant, concerning an act of domestic violence that the victim perpetrated on the defendant"; and the violence between them was escalating, as Appellant violated a restraining order by breaking into Fae's home. The court then considered factors related to Appellant's criminal history as set forth in Rule 4.421(b): Appellant's "prior conviction in Texas [subjects] him . . . to many years in state prison if he were to violate parole," and he suffered other prior convictions; Appellant served prior prison terms; Appellant was on parole at the time he committed the offenses in this case; and Appellant's prior performance on probation or parole was unsatisfactory.

Applying the principles articulated in *Lynch*, *supra*, 16 Cal.5th 730, we hold that the trial court's imposition of an upper term sentence violated Appellant's Sixth Amendment right

15

to a jury trial because the court relied on aggravating factors that were not stipulated to by Appellant or found true by a jury beyond a reasonable doubt. We further hold that the violation was prejudicial because we cannot conclude beyond a reasonable doubt that a jury would have found all of the aggravating factors upon which the trial court relied to be true. Appellant thus is entitled to a remand for resentencing.

As we discussed in our original opinion, the aggravating factor that the crime involved a threat of death or great bodily harm to the victim was properly proven under amended section 1170, subdivision (b). Because the offense of criminal threats requires that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person" (§ 422, subd. (a)), the jury necessarily found this factor to be true beyond a reasonable doubt in convicting Appellant of the criminal threats charge in count 2.

However, as we also explained in our prior opinion, at least one other crime-related aggravating factor relied on by the trial court in imposing an upper term sentence was not supported by the evidence. Specifically, the court found that "in this situation the victim was particularly vulnerable with young children that she was caring for." Yet Fae stated that she was home alone when the burglary occurred. Indeed, at the time of the incident in this case, custody of Fae's children had been taken away from her. In considering this factor, the court also noted that there was "an approximate 30-year age difference between the victim and the defendant." But at the time of the trial, Fae was 34 years old. Given that her relationship with Appellant lasted eight years, she would have been about 26 years old when the relationship began. As such, Fae was not a child or underage.

16

Thus, "[t]he record . . . does not reflect such a clear-cut instance of victim vulnerability that we confidently can conclude the jury would have made the same findings, as might be the case if, for example, the victim[] had been elderly, very young, or disabled, or otherwise obviously and indisputably vulnerable." (*People v. Sandoval* (2007) 41 Cal.4th 825, 842, superseded by statute on other grounds as stated in *Lynch*, *supra*, 16 Cal.5th at p 757.)

Because the evidence did not support at least one of the aggravating factors on which the trial court based its sentencing decision, we cannot conclude that "the omission of a jury trial was harmless beyond a reasonable doubt as to *every* aggravating fact the trial court used to justify an upper term sentence." (*Lynch*, *supra*, 16 Cal.5th at p. 775.) Under these circumstances, Cole's sentence must be reversed, and the matter must be remanded to allow the People to retry the aggravating factors and the trial court to exercise its discretion under amended section 1170, subdivision (b). (*Lynch*, at p. 776.) As the Supreme Court instructed in *Lynch*, "[o]n remand, the parties remain free to introduce at trial all relevant evidence to support or contest the factual support for the aggravating circumstances set out in the California Rules of Court. The court may rely on any properly proven aggravating facts, including prior convictions or facts necessarily found by the jury to support a verdict on underlying counts and enhancements. The court retains its discretion to impose an upper term sentence if it concludes that one or more properly proved circumstances justify such a sentence." (*Id*. at pp. 777–778.)

## DISPOSITION

Appellant's conviction is affirmed. The judgment imposing an upper term sentence on count 1 is reversed, and the matter is remanded with directions for the trial court to conduct further proceedings on the aggravating sentencing factors and to exercise its discretion under section 1170, subdivision (b).


VIRAMONTES, J.


WE CONCUR:


GRIMES, Acting P. J.


WILEY, J.